UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WIZARD WORLD, INC.,<br><br>Plaintiff,<br><br>-*against*-<br><br>STEPHEN SHAMUS and JOHN DOES 1 - 10,<br><br>Defendants. | ____ Civ. _____<br><br><br>COMPLAINT |

Plaintiff Wizard World, Inc. (the "Company" or "Wizard World"), for its Complaint states, upon knowledge as to itself and upon information and belief as to all other matters and persons, as follows:

## INTRODUCTION

1. Plaintiff Wizard World brings this case to recover property and damages from Stephen Shamus, a former executive employee who abused his position of trust to misappropriate substantial sums, believed to exceed $1 million, and caused other losses. Plaintiff operates popular conventions commonly known as "comic cons." As plaintiff's Chief Marketing Officer, Shamus was relied upon to retain and interact with the celebrities and other artists that served as major attendance draws at Wizard World's highly regarded conventions. The autographs and other merchandise created at these conventions generate substantial revenue for Wizard World.

2. For many years, defendant Shamus illicitly obtained autographs and other memorabilia from the celebrities retained by Wizard World and sold them for his own benefit and that of his confederates. Indeed, Shamus often negotiated money-losing deals for Wizard World in order to gain access to celebrities whom he could exploit for his own enrichment.

3903239-5

Defendant Shamus thus diverted substantial funds and resources, all generated and paid for by Wizard World, to himself and his co-conspirators.

3.    On October 27, 2016, Wizard World terminated Shamus and demanded return of all illicit autographs and memorabilia generated with its resources. Injunctive relief is urgently needed to prevent Shamus's further sale and distribution of plaintiff's property.

THE PARTIES

4.    Plaintiff Wizard World, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 662 N. Sepulveda Boulevard, Suite 200, Los Angeles, CA 90049.

5.    Defendant Stephen Shamus is an individual residing at 27 West 55th Street, New York, NY 10019. Defendant served as the Chief Marking Officer of plaintiff for more than a decade, until his termination on October 27, 2016.

6.    Defendants John Does 1 - 10 are persons who aided and abetted defendant Shamus and shared in the illicit proceeds generated by his scheme.

JURISDICTION AND VENUE

7.    The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). This is a dispute between citizens of different states, and the amount in controversy exceeds the sum of $75,000 exclusive of interest.

8.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), as defendant resides in this District.

FACTUAL ALLEGATIONS

Wizard World's Business

9.    Wizard World organizes pre-eminent comic conventions across North America for fans of pop culture, movies, TV shows, video games, technology, toys, comic books, and

2

3903239-5

graphic novels. Wizard World hosts approximately twenty conventions each year, and has gained substantial notoriety for producing conventions that are attractive to attendees, entertainment companies, gaming and toy companies, publishers, retailers, and celebrities.

10.    Wizard World commits millions of dollars each year to the development and production of its conventions, and devotes substantial resources and time to ensuring they are a success. It holds the production rights to approximately twenty well-regarded conventions across the country. Wizard World receives revenue from its conventions through, among other things, admission fees, exhibitor booth sales, sponsorships, and autographed merchandise.

11.    As a critical component to each convention, Wizard World provides attendees with opportunities to meet with high-profile celebrities and obtain photographs, autographs, and other authentic collectibles/memorabilia. These celebrities include well-known figures from buzz-worthy television shows such as "Daredevil," "The Walking Dead," "American Horror Story," and "The Vampire Diaries," as well as household names from classic television shows and movies.

12.    Wizard World devotes substantial time and money to recruit and compensate the celebrities and artists that appear at its conventions. At the conventions, the celebrities autograph photographs and other memorabilia for attendees on a fee basis. These autographs are themselves valuable property, as well as cherished memorabilia for the fans who acquire them.

13.    Wizard World contracts with an independent authentication and grading service for collectibles, photographs, and other memorabilia. This partnership allows attendees to have the autographs authenticated on the spot at the conventions by a respected industry leader. A representative is stationed at each celebrity and artists booth, and is available to witness and

3903239-5

collect an autograph to allow for proper authentication. This authentication process ensures the value of each autograph and/or collectible for the attendee/purchaser.

Shamus's Responsibilities

14.     Shamus has worked for the Company (and its predecessors) for well over a decade, and was a trusted executive employee for the Company. As Chief Marketing Officer, he was the executive with principal responsibility for selecting the celebrities for Wizard World events and negotiating the terms of their compensation. Shamus's duties also included maintaining relationships with the celebrities and artists that appear at the conventions as well as their management agencies and talent agencies.

15.     Shamus personally attended many of the conventions produced by the Company in connection with his responsibilities as Chief Marking Officer. The Company would cover Shamus's travel expenses (always first class) to attend. Shamus interacted directly with the celebrities, artists, and their representatives, both before and during the conventions, and gained their trust through his role with the Company. As a result, Shamus was intimately familiar with the confidential nature of the Company's business relationships with these celebrities and artists, as well as the importance of the authentication process.

Shamus's Wrongful Conduct

16.     Unbeknownst to plaintiff until recently, Shamus developed a scheme whereby he would enrich himself through Wizard World's relationships and access to its celebrities and artists. This scheme is in direct disregard of his duties to the Company.

17.     Defendant Shamus regularly arranged for the celebrities under contract with Wizard World to create autographed and/or collectible merchandise for Shamus's personal benefit. Upon information and belief, celebrities would provide Shamus with autographs and/or items of value to generate collectible merchandise. The celebrities and artists provided these

4

autographs, memorabilia, and/or merchandise during the course of Shamus's duties for Wizard World (the "Stolen Memorabilia"). Shamus did not pay for the autographs on these items—the key component of their value—all of which were provided through plaintiff's retention of the celebrity. Shamus later obtained authentication of the Stolen Memorabilia through a third party, using the Wizard World convention to establish authenticity, and arranged for the sale of the Stolen Memorabilia, sometimes through one or more outlets owned by members of his extended family in the New York metropolitan area. By way of example, Shamus routinely had Wizard World funded celebrities sign baseballs. He even arranged for the cast of "Back to The Future" to autograph mock hoverboards similar to the type made famous by Marty McFly.

18.    Defendant Shamus did not have any right to the Stolen Memorabilia signed by the celebrities, who were under contract with Wizard World. The opportunity to acquire and sell the Stolen Memorabilia only came about because of his role with Wizard World and Wizard World's retention of the celebrities and artists. The autographs and other items of value were paid for entirely by Wizard World.

19.    Defendant did not have the right to sell the Stolen Memorabilia for his own benefit. Shamus made substantial profit off of this scheme for years, without the consent of the Company.

20.    Defendant Shamus has caused loss to plaintiff in other ways. Through his position, defendant negotiated the terms of the retention of each celebrity hired by Wizard World. Defendant routinely negotiated "fixed fee" deals under which Wizard World lost money, but defendant gained access to a celebrity from whom he could obtain valuable signatures. Defendant also played a key role in selecting the artists that appeared at the Wizard World conventions. He used this position of trust to select celebrities whose signatures were most

5

capable of resale in the markets where defendant trafficked in stolen memorabilia. Defendant's conduct also interfered with the Company's relationship with celebrities and caused them to charge a higher fee.

21. In recent days, defendant Shamus has taken his fraud to a new level. No doubt sensing that his employer would soon uncover his illegal scheme, on or about October 18, 2016, Shamus presented Wizard World with an alleged "Employment Letter" dated May 11, 2011. The Letter was signed by his brother, Gareb Shamus, purportedly in the brother's capacity as an executive officer of Wizard World. Senior management at Wizard World had not previously been aware of the document. The Board of Wizard World never approved the document. The Company's auditors and SEC counsel had no record of its existence. Neither Shamus nor Wizard World had followed the terms of the alleged Letter at any point. Notwithstanding all of these facts, Shamus made a demand that Wizard World pay him large sums of money under this bogus document. Wizard World promptly rejected his demand. The Letter is a fraud and a fabrication.

22. Anticipating discovery of his scheme, defendant attempted to delete the entire contents of his Company email account on or about October 26, 2016. Plaintiff sent defendant a notice of termination of his employment with plaintiff on October 27, 2016, effective immediately. A copy of the notice is annexed as Exhibit A.

23. Defendant has failed to return any of the Stolen Memorabilia, or otherwise compensate plaintiff for his misappropriations. Defendant has also failed to return a Company laptop which contained confidential and proprietary information belonging to the Company (the "Company Laptop").

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Breach of Fiduciary Duty)

24. Plaintiff repeats the allegations in paragraphs 1 to 23 above.

3903239-5

25.     As an executive employee of plaintiff, defendant owed fiduciary duties to plaintiff.

26.     Upon information and belief, defendant breached these duties by misappropriating at least $1 million in corporate goods and assets, in violation of his fiduciary duties to plaintiff. Defendant also breaches these duties by refusing to return plaintiff's proprietary and confidential information on the Company Laptop.

27.     As a result of defendants multiple breaches of fiduciary duties, plaintiff has been damaged in an amount to be proven at trial, but believed to exceed $1 million. Among other things, plaintiff is entitled to the fair value of the autographs and merchandise had defendant not misappropriated them.

28.     Plaintiff is also entitled to an order directing defendant to return the Company Laptop.

29.     Further, during the period during which defendant was misappropriating plaintiff's assets through his termination date, defendant was a faithless servant to plaintiff, and plaintiff is therefore entitled to recover, in addition to other damages, all compensation, including salary, commissions, and bonuses paid to defendant during this period.

30.     Additionally, in order to compensate plaintiff for the loss of its interests in the autographs and merchandise, and the attendant right to share in the profits of those goods, plaintiff is entitled to a constructive trust over defendant's interest in these goods and any profits or other payments to which defendant is entitled.

31.     Plaintiff is also entitled to an accounting to determine the extent of defendant's malfeasance.

## AS AND FOR A SECOND CAUSE OF ACTION
(Misappropriation of Corporate Assets)

32.    Plaintiff repeats the allegations in paragraphs 1 to 31 above.

33.    As an executive employee of plaintiff, defendant owed fiduciary duties to plaintiff.

34.    Upon information and belief, defendant misappropriated at least $1 million by diverting prospective business away from plaintiff by obtaining autographs and other merchandise from plaintiff's business relationships with celebrities and artists.

35.    Defendant's misappropriation of these assets was in violation of his fiduciary duties to plaintiff.

36.    Plaintiff did not provide consent for defendant's misappropriation of plaintiff's assets.

37.    As a result of defendant's misappropriation, plaintiff has been damaged in an amount to be proven at trial, but believed to exceed $1 million; and are entitled to a constructive trust over defendant's interest in the autographs and other merchandise and any profits or other payments to which defendant is entitled as a result of such interest, and an accounting to determine the extent of defendant's malfeasance.

## AS AND FOR A THIRD CAUSE OF ACTION
(Breach of Contract)

38.    Plaintiff repeats the allegations in paragraphs 1 to 37 above.

39.    Defendant and plaintiff entered into a valid, binding and enforceable agreement that governed the terms of the employment relationship with defendant.

40.    Plaintiff performed in accordance with its duties, obligations, and promises as required by that agreement.

3903239-5

41.     Defendant breached the agreement by, among other things, misappropriating corporate assets, and acting in a manner disloyal to the Company.

42.     As a direct and proximate result of defendant's wrongdoing, plaintiff has been damaged in an amount to be proven at trial, but believed to exceed $1 million, including all compensation, salary, commissions, and bonuses paid to defendant during the period of his breaches.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Accounting)

43.     Plaintiff repeats the allegations in paragraphs 1 to 42 above.

44.     As an executive employee of plaintiff, defendant owed fiduciary duties to plaintiff.

45.     As alleged above, defendant has misappropriated at least $1 million of assets belonging to plaintiff for his own personal purposes.

46.     Defendant has failed and refused to provide the information necessary to evaluate the scope of his malfeasance.

47.     The full scope of defendant's wrongdoing and the exact amount of his misappropriation and waste can only be ascertained by a complete audit.

48.     An accounting is necessary in order for the parties and the Court to determine the full amount of assets that defendant diverted, wasted, and misappropriated, which funds and assets rightfully belonged to plaintiff.

49.     Plaintiff has no adequate remedy at law.

50.     Plaintiff respectfully requests that the Court order defendant to provide a full and complete audit and account.

3903239-5

## AS AND FOR A FIFTH CAUSE OF ACTION
(Conversion)

51.     Plaintiff repeats the allegations in paragraphs 1 to 50 above.

52.     At all times relevant herein, defendant knowingly and willfully converted funds and assets justly belong to plaintiff, including the Company Laptop.

53.     Defendant intentionally and without authority assumed and exercised the right of ownership and control over funds and assets belonging to plaintiff through an elaborate scheme to create and sell autographs and other merchandise at plaintiff's conventions, thereby interfering with plaintiff's rights to do the same. Defendant intentionally and without authority assumed and exercised the right of ownership and control over the Company Laptop.

54.     As a direct and proximate result of said conversions, plaintiff was damaged in an amount not less than $1 million.

55.     In addition, defendant's egregious conduct and unlawful business dealings were wanton, reckless, outrageous, and in willful disregard of plaintiff's rights, such that punitive damages should be imposed against defendant in an amount to be fixed by the Court.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Declaratory Judgment)

56.     Plaintiff repeats the allegations in paragraphs 1 to 55 above.

57.     There is an actual controversy between the parties regarding the Employment Letter dated May 11, 2011 presented by defendant. Wizard World disputes the authenticity of this document, and it is not an enforceable, valid, and binding contract.  A declaratory judgment would settle and finalize this dispute.

58.     Based on the foregoing, Plaintiff is entitled to a Declaratory Judgment that the alleged contract is void and unenforceable.

3903239-5

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Injunction and Seizure)

59.     Plaintiff repeats the allegations in paragraphs 1 to 58 above.

60.     Defendant is in possession of the Stolen Memorabilia, the Company Laptop, and other corporate records or documents in his possession, including those reflecting any Company confidential and/or proprietary information, all of which plaintiff is entitled to. All of these items are unique.

61.     Plaintiff is entitled to a preliminary and permanent injunction preventing defendant from offering for sale, distributing, or transferring any of the Stolen Memorabilia, the Company Laptop, or any other corporate records or documents, and requiring defendant to turn over these items to plaintiff.

62.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff prays that the Court award the following relief:

A.     Preliminarily and permanently enjoining and restraining defendant and his agents, affiliates, servants, employees, successors and assigns, and all those acting in active concert or participation with them, from offering for sale, distributing, or transferring any of the Stolen Memorabilia, the Company Laptop, or any other corporate records or documents and requiring their return to plaintiff;

B.     Ordering defendant to immediately return all of plaintiff's property, including the Stolen Memorabilia, the Company Laptop, and any other corporate records in his possession, including those reflecting any Company confidential and/or proprietary information;

C.     Awarding compensatory damages as a result of defendants' breaches of contract, breaches of fiduciary duties, and/or misappropriation of corporate assets, in an amount equal to at least $1 million; a constructive trust over defendant's interest in the autographs and

11

3903239-5

merchandise and any profits or other payments to which defendant is entitled as a result of such

interest; and an accounting;

     D.     Ordering defendant to provide a full and complete audit and account;

     E.     Declaring that the alleged "Employment Letter" contract is void and

unenforceable;

     F.     Interest, attorneys' fees, and costs; and

     G.     Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      October 28, 2016

          OLSHAN FROME WOLOSKY LLP

By:  */s/ Thomas J. Fleming*
     Thomas J. Fleming
     Kyle J. Kolb
     1325 Avenue of the Americas
     New York, New York 10019
     (212) 451-2300

     *Attorneys for Plaintiff*
     *Wizard World, Inc.*

3903239-5