**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WIZARD WORLD, INC.,<br><br>　　　　　Plaintiff,<br><br>　– against –<br><br>STEPHEN SHAMUS,<br><br>　　　　　Defendant.<br><hr>STEPHEN SHAMUS,<br><br>　　　　　Counterclaim-<br>　　　　　Plaintiff,<br><br>　- against -<br><br>WIZARD WORLD, INC.,<br><br>　　　　　Counterclaim-<br>　　　　　Defendant. | **ECF CASE**<br><br>1:16-cv-08428<br><br><br>**DEFENDANT/COUNTERCLAIM-PLAINTIFF'S RULE 26(a) DISCLOSURES** |

Defendant/Counterclaim-Plaintiff Stephen Shamus ("Shamus"), by and through his attorney, Michael L. Ferch, Esq., makes the following initial disclosures to Plaintiff/Counterclaim-Defendant Wizard World, Inc. ("Wizard World") pursuant to Fed. R. Civ. P. 26(a)(1), based on information reasonably available to him, without waiving his right to supplement and/or amend these disclosures as new or additional information becomes available after the date of these disclosures set forth below.

**I.    The Name and, if Known, the Address and Telephone Number of Each Individual Likely to Have Discoverable Information – Along with the Subjects of that Information -- that Shamus May Use to Support His Counterclaims and Defenses, Unless Solely for Impeachment.**

The following persons likely to have discoverable information:

1.    Paul Kessler, Chairman of the Board: knowledge of Shamus contract and monies due and owing thereunder; day-to-day operations of Wizard World, including business operations, strategy, internal controls, finances, and governance;

2.    John D. Maatta, CEO: knowledge of Shamus contract and monies due and owing thereunder, as well as verbal representations and promises regarding payment to Shamus of monies outstanding; knowledge of poor financial position of Wizard World; knowledge of and promises regarding commissions for JSA, Ultra Pro, and Heritage Auctions deals; knowledge of duties and obligations of Shamus to Wizard World; knowledge of oversight mechanisms for all contracts negotiated by Shamus on behalf of Wizard World; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia to a wide variety of recipients;

3.    Randy Malinoff, COO: knowledge of Shamus contract and monies due and owing thereunder, including commissions, as well as verbal representations and promises to Shamus regarding payment of monies outstanding, including commissions; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia to a wide variety of recipients; knowledge of and promises regarding commissions for JSA, Ultra Pro, and Heritage Auctions deals;

4.    Vadim Mats, Board Member: knowledge that Shamus did not "steal" Wizard World "property";

5.    Gregory H. Suess, Board Member: knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia; knowledge that Shamus did not "steal" Wizard World "property";

6.    Kenny Shamus, Board Member: knowledge of Shamus contract and financial operations of Wizard World; knowledge that Shamus did not "steal" Wizard World "property";

7.    Jordan Schur, nominated Board Member: knowledge of Shamus contract and monies due and owing thereunder; knowledge of financial position of Wizard World; knowledge of events and circumstances surrounding Shamus's termination; knowledge of and promises regarding commissions for JSA, Ultra Pro, and Heritage Auctions deals;

8.    Joseph Lucosky, Legal Counsel to Wizard World: knowledge of Shamus contract and monies due and owing thereunder; knowledge of events and circumstances surrounding Shamus's termination including allegations of "stealing"; knowledge of Wizard World's offer, prior to termination, to extend Shamus's employment through February 2017;

9.    John Macaluso, former CEO/Chairman of the Board: knowledge of Shamus contract and monies due and owing thereunder, as well as verbal representations and promises to Shamus regarding payment of monies outstanding, including commissions; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia; knowledge of and promises regarding commissions for JSA, Ultra Pro, and Heritage Auctions deals;

10.    Gareb Shamus, former CEO: signatory to Shamus contract; knowledge of Shamus contract;

11. Eric Weisblum, Major Shareholder: knowledge and information that Wizard World shareholders intended to replace the current Board of Directors, withdraw the instant lawsuit and issue a public apology to Shamus;

12.    Robb Knie, Major Shareholder: knowledge and information that Wizard World shareholders intended to replace the current Board of Directors, withdraw the instant lawsuit and issue a public apology to Shamus;

13.    Vince Labarbara, Major Shareholder: knowledge and information that Wizard World shareholders intended to replace the current Board of Directors, withdraw the instant lawsuit and issue a public apology to Shamus;

14.    Michael Mathews, former CEO/Chairman of the Board: signatory to Shamus contract; knowledge of Shamus contract and monies due and owing thereunder;

15.   <u>Brad Powers, former VP of Business Affairs</u>: drafter of Shamus contract; knowledge of Shamus contract and monies due and owing thereunder;

16.   <u>Damian Breuer, former Videographer</u>: knowledge that Shamus did not "steal" Wizard World "property"; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia;

17.   <u>Stephen Shamus</u>: knowledge of Shamus contract and monies due and owing thereunder, as well as verbal representations and promises to Shamus regarding payment of monies outstanding, including commissions; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia; knowledge that Shamus did not "steal" Wizard World "property"; knowledge that Shamus and/or his family did not sell Wizard World property online or otherwise; knowledge of Wizard World major shareholders and Shamus's disincentive to "steal" from Wizard World;

18.   <u>Stan Gloss, Controller</u>: knowledge of Shamus contract and monies due and owing thereunder; knowledge of data compilations regarding monies paid and owed to Shamus; held Shamus contract at Wizard World since inception in May 2011; knowledge that all private signing monies were accounted for in TicketLeap and deposited in Wizard World bank accounts;

19.   <u>Peter Katz, Sales Director</u>: knowledge that Shamus did not "steal" Wizard World "property";

20.   <u>Marlene Frias, former Talent Manager</u>: knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia; knowledge that Shamus did not "steal" Wizard World "property";

21.   <u>Auri Shervington, former Talent Coordinator</u>: knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia; knowledge that Shamus did not "steal" Wizard World "property";

22.   <u>Shelby Engquist, Talent Coordinator</u>: knowledge that Shamus did not "steal" Wizard World "property";

23.   <u>Joe Bertolino, Talent Coordinator</u>: knowledge that Shamus did not "steal" Wizard World "property";

24.  Alex Rae, Artist Alley Coordinator: knowledge that Shamus did not "steal" Wizard World "property";

25.  Katie Ruark, Artist Alley Coordinator: knowledge that Shamus did not "steal" Wizard World "property";

26.  Erik Santomauro, JSA: knowledge and information that Shamus had a total of fourteen (14) personal items authenticated by JSA, which were mostly gifted to Wizard World executives and staff and others;

27.  Harshen Patel, CGC: knowledge and information that Shamus had approximately seventy-five (75) items signed and encapsulated, which were then mostly gifted to Wizard World executives and staff and others;

28.  Gary Hasson, Outside Talent Manager: knowledge and information that Shamus asked for a few autographed items over a fifteen (15) year period;

29.  John Alcantar, Outside Talent Manager: knowledge and information that Shamus asked for a few autographed items over a fifteen (15) year period;

30.  Ryan Munoz, Events Manager: knowledge of internal controls regarding, and inventory of, all signed merchandise at Wizard World;

31.  Michael Abalos, Logistics: knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia;

32.  Debbie Hong, former Artist Alley Coordinator: knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia;

33.  Nicole Concepcion, Coordinator: knowledge that Shamus did not "steal" Wizard World "property"; knowledge of custom and practice at Wizard World of receiving and gifting free autographs and photo ops and memorabilia;

34.  Donna Chin, former Artist Alley Coordinator and current Programming Coordinator: knowledge that Shamus did not "steal" Wizard World "property";

35.  Tegan Dunk, Coordinator: knowledge that Shamus did not "steal" Wizard World "property";

36.  Jason McDonald, former Senior Executive: knowledge that Shamus did not "steal" Wizard World "property";

37.  Jerry Milani, Public Relations: knowledge that Shamus did not "steal" Wizard World "property";

38.  Tim Raybould, TicketLeap CEO: knowledge that all private signing monies paid through TicketLeap were deposited in Wizard World bank accounts; knowledge that Shamus had no personal accounts with TicketLeap;

39.  All persons identified in Wizard World's Initial Disclosures;

40.  All persons identified in any documents produced by any party; and

41.  All persons identified in any responses to interrogatories propounded by any party.

All of the individuals identified are likely to have information regarding Wizard World's claims and Shamus's counterclaims and the facts and circumstances of Shamus's work history and reputation, his purported "stealing" of Wizard World's "property," the formation of the May 11, 2011 employment contract and performance by Shamus thereunder, the circumstances surrounding Shamus's termination, the monies owed to him by Wizard World's breaches, as well as the general course of conduct and business activities of the parties as they relate to the causes of action by all parties in this lawsuit.

At this stage, Shamus is not aware of the identity of other individuals likely to have information that he may use to support his claims.  Shamus will continue his pretrial investigation and supplement these Initial Disclosures or respond to pretrial discovery requests as appropriate.

II. **A Copy of or a Description by Category and Location of, All Documents, Electronically Stored Information, and Tangible Things That are in Possession, Custody or Control of Shamus and that Shamus May Use to Support His Claims, Unless Solely for Impeachment.**

1.  A copy of Shamus's May 11, 2011 employment agreement with Wizard World;

2.   Email correspondence between the parties regarding monies owed to Shamus;

3.   Wizard World's notice of termination to Shamus;

4.   Shamus's compensation records from Wizard World;

5.   Email correspondence between Shamus and Wizard World regarding his job duties and responsibilities;

6.   all documents Shamus produces in discovery and receives from Wizard World in discovery in connection with the instant action.

At this stage of discovery, Shamus is not aware of any other documents in his possession that he may use to support his claims.  Shamus will continue his pretrial investigation and supplement his Initial Disclosures or respond to pretrial discovery requests, as appropriate.

**C.   A Computation of Shamus's Damages**

Shamus believes in good faith that the following amounts in damages are due and owing under his May 2011 employment agreement:

| | |
|---|---|
| Unpaid salary: | $232,000 |
| Unpaid bonuses: | $151,000 |
| Severance: | $262,000 six (6) months salary |
| | $20,000 (one-half (1/2) year-end bonus) |
| SUBTOTAL: | $665,000 |
| Commissions: | to be determined |
| Interest: | to be determined |
| Attorney fees: | to be determined |
| Other relief: | to be determined |

Shamus reserves the right to amend or supplement this Initial Disclosure as and when further financial information via discovery becomes available.

**D.   The Ability to Copy and Inspect the Contents of Any Pertinent Insurance Agreement.**

Not applicable to Shamus.

**E.   Reservation of Rights and Amendments.**

The responses set forth herein are made without waiving:

1.   the right to object on the grounds of competency, privilege, relevancy, materiality or any other proper ground to the use of material produced herein, for any purpose, in whole or in part, in any subsequent proceeding in this action or any other action;

2.   the right to object on any and all proper grounds, at any time, to discovery requests or other discovery procedures involving or relating to the subject matter addressed herein; and

3.   the right at any time to revise, correct, modify, supplement, or clarify any of the responses provided herein.

Shamus expressly reserves the right to supplement or amend these Initial Disclosures as may be appropriate and necessary.

Dated:  New York, New York
        December 8, 2016

LAW OFFICE OF MICHAEL L. FERCH

By:_____
    Michael L. Ferch [MF-6211]
    *Attorneys for*
    *Defendant/Counterclaim-Plaintiff*
    *Stephen Shamus*
    280 Madison Avenue #912
    New York, New York 10016
    Phone: (212) 757-2520
    Fax:   (718) 972-4505

TO:   THOMAS J. FLEMING, ESQ.
      KYLE J. KOLB, ESQ.
      Olshan Frome Wolosky LLP
      Attorneys for Plaintiff
      1325 Avenue of the Americas
      New York, New York 10019
      Phone: (212) 451-2300

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent by ECF filing, this 8th day of December, 2016, to:

THOMAS J. FLEMING, ESQ.
KYLE J. KOLB, ESQ.
Olshan Frome Wolosky LLP
Attorneys for Plaintiff
1325 Avenue of the Americas
New York, New York 10019
Phone: (212) 451-2300

_____
Michael L. Ferch