UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WIZARD WORLD, INC.

                      Plaintiff,      No. 16 Civ. 8428 (RA)

    -*against*-

STEPHEN SHAMUS and JOHN DOES 1 – 10,

                      Defendants.

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR
PREJUDGMENT ATTACHMENT

OLSHAN FROME WOLOSKY LLP
*Attorneys for Plaintiff*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

Table of Contents

Preliminary Statement ..................................................................................................... 1

Statement of Facts .......................................................................................................... 2

    Wizard World's Registration to Do Business in New York ..................................... 2

    Shamus's Purported Employment Agreement ......................................................... 3

    Defendant Destroys Crucial ESI ............................................................................. 4

    The Company's Current Financial Condition ......................................................... 5

Argument ........................................................................................................................ 5

    I      THE COURT SHOULD DENY THE MOTION FOR ATTACHMENT ............... 5

          A.    The Standard for Attachment ..................................................................... 5

          B.    Defendant Has Not Established Any Grounds for Attachment ................... 6

          C.    Defendant Has Not Shown a Probability of Success on the Merits .......... 10

          D.    Defendant Has No Probability of Success Because His Counterclaims Will Be Dismissed as a Result of His Destruction of Evidence ................ 13

Conclusion .................................................................................................................... 16

Plaintiff Wizard World, Inc. ("Wizard World," the "Company," or "Plaintiff"), by its attorneys Olshan Frome Wolosky LLP, respectfully submits this memorandum of law in opposition to defendant Stephen Shamus's ("Shamus" or "Defendant") motion for prejudgment attachment brought by order to show cause.

Preliminary Statement

Defendant Stephen Shamus asks this Court to issue an Order of Attachment pursuant to Rule 64, FRCP, and CPLR 6201. According to Shamus, Plaintiff Wizard World is not registered to do business in New York. This statement is false. In opposition, Wizard World proffers its Certificate of Good Standing to do business in New York. Indeed, Wizard World has maintained a New York office since December 2010 and became registered to do business here in February 2011. Defendant Shamus also asserts, without proof or explanation, that Wizard World is engaged in a program to hide or secrete assets from New York. This too is false. Wizard World is a public company, with quarterly disclosures of its financial condition. These disclosures confirm that Wizard World continues to operate its business in the ordinary course.

Defendant Shamus also fails in his burden to establish a likelihood of success on the merits to enforce his alleged Employment Agreement dated May 10, 2011. The evidence is uncontroverted that, notwithstanding its execution, Shamus's salary was never altered to match the terms of the alleged agreement. When the Board of Wizard World approved a compensation package for its CEO just days later, it approved a salary level *below* that claimed by Stephen Shamus in this case. For more than five years, Wizard World set Stephen Shamus's compensation without regard to any alleged agreement. Stephen Shamus acquiesced in this arrangement, without protest and without any demand for compensation under the terms of the alleged contract. Indeed, Stephen Shamus engaged in extensive negotiations with Wizard World senior management over his compensation, never once mentioning the purported contract. The

alleged agreement first surfaced in September 2016, when Shamus became disgruntled about his failure to receive a promotion. These facts, and others detailed below, demonstrate that Stephen Shamus is unlikely to prevail on his breach of contract claim.

A third ground exists for denial of the motion. Notwithstanding the imminence of litigation, Stephen Shamus destroyed his Wizard World laptop, allegedly in a fit of despondency. His colorful story, involving an overnight hospital stay, has a "dog ate my homework" quality. Plaintiff anticipates establishing that the destruction of evidence was willful. Indeed, Defendant's claims are at serious risk of dismissal due to his blatant destruction of crucial evidence. Accordingly, Defendant has failed to meet the high threshold to justify the imposition of an attachment.

Statement of Facts

The facts set forth below are taken from the accompanying Declarations of John D. Maatta, dated January 23, 2017 (the "Maatta Decl."); Joseph Lucosky, dated January 23, 2017 (the "Lucosky Decl."); and John Macaluso, dated January 23, 2017 (the "Macaluso Decl.").

Wizard World's Registration to Do Business in New York

On December 7, 2010, GoEnergy, Inc. ("GoEnergy"), a publicly traded shell corporation, engaged in a share exchange with the shareholders of a private company founded and run by Gareb Shamus that produced pop culture and multimedia conventions. GoEnergy then changed its name to Wizard World. Pursuant to the terms of this transaction, Gareb Shamus became the president and Chief Executive Officer of Wizard World, and a member of its Board of Directors (the "Board"). Defendant Stephen Shamus was the Chief Marketing Officer of Gareb's former business, and continued as the Company's Chief Marketing Officer after the transaction. (Lucosky Decl. ¶ 2; Maatta Decl. ¶ 3.)

Defendant alleges that Wizard World, a Delaware corporation, is not registered to do business in the State of New York. Upon completing the share exchange, Wizard World's corporate headquarters was relocated in New York City, and it has maintained a New York office ever since. On February 2, 2011, it filed its Application for Authority to Do Business in New York with the New York Department of State. Wizard World is currently in good standing and registered to do business in New York. In August 2016, the Company's registration was dissolved "by proclamation." This happened in error because the New York State Department of Taxation was crediting Wizard World's tax payments to a temporary employer identification number ("EIN"), not the final EIN. Wizard World promptly asked the Department of Taxation and Finance to correct this error, and the New York State Department of Taxation issued an Annulment of Erroneous Proclamation, restoring Wizard World's status to good standing. (Maatta Decl. ¶ 10, Exs. C-E.)

Shamus's Purported Employment Agreement

Defendant Shamus alleges that he entered into an employment agreement dated May 10, 2011, which his brother Gareb Shamus signed as the Company's CEO. (*See* Shamus Decl. Ex. 1 (Dkt. Nos. 20-1, 20-2) (the "Purported Agreement").) The Purported Agreement provided Defendant with a $150,000 starting base salary (with a mandatory minimum 10% annual increase), and options to purchase 500,000 shares of common stock, among other things. This alleged agreement would have made Shamus the highest paid employee of the Company at the time. (Maatta Decl. ¶ 12; Lucosky Decl. ¶ 3.)

There is overwhelming evidence that the agreement was either abandoned or never intended to be put into effect. The Company never performed any of its terms, nor did it ever record any liability for the alleged unpaid compensation, notwithstanding Stephen's fraternal ties to the CEO. The Company made no disclosure of its terms, either in its financial statements or its

3

SEC filings. (Maatta Decl. ¶ 16; Macaluso Decl. ¶¶ 3, 5; Lucosky Decl. ¶¶ 4-5.) Over the next five years, Stephen Shamus engaged in extensive discussions about his compensation with senior management, without mention of the alleged contract or any right to receive payment beyond the salary set by the CEO or the Board. Indeed, Stephen complained about his compensation, also without mention of any alleged contractual rights. (Maatta Decl. ¶ 12; Macaluso Decl. ¶ 4.) The corporate controller at the time, Stanley Gloss, received the Purported Agreement from Stephen "years later" and acknowledged that it was "never acted upon." (Maatta Decl. Ex. F.) Moreover, Michael Matthews, whose initials purportedly appear on the document, has advised that he does not recall initialing the document. (Maatta Decl. ¶ 19, Ex. H.)

The timing of Stephen's disclosure of the Purported Agreement underscores its dubious nature. After the Company failed to make Stephen its CEO in May 2016, he became insubordinate and rude to the new CEO, John D. Maatta. Once it was clear that his termination was near at hand, Stephen first announced that he had an employment contract and staked a claim to back pay and severance. (Maatta Decl. ¶¶ 8, 13.)

Perhaps no greater testimony to the Company's good faith, and the invalidity of the alleged document, is the fact that with his Complaint, Stephen has filed a separate agreement which includes a post-termination non-competition covenant. Wizard World had no knowledge of this document either and has made no attempt to enforce it. (*Id.* ¶ 17.) Meanwhile, Stephen has announced that he is opening a firm to compete with Wizard World

<u>Defendant Destroys Crucial ESI</u>

Shamus became increasingly subordinate in the fall of 2016, and complained to the CEO, John Maatta, that he resented being "passed over" for the CEO position twice. Shamus refused to respond to the CEO, and directed all communications to his lawyer. (*Id.* ¶ 14.) Shamus claimed that due to these events, "he became highly emotional and suffered a severe panic attack and

4

threw his computer [a Company laptop] and everything on his home table to the ground. He proceeded to grab everything that reminded him of Wizard World such as his shirts, keys, security card, and broken computer and threw them in the garbage." (Maatta Decl. Ex. A.)

Shamus was terminated on October 27, 2016, as a result of his repeated insubordination and the breaches alleged by Plaintiff in this action. (Maatta Decl. ¶ 14.)

The Company's Current Financial Condition

After Defendant's termination, the Company released its quarterly financial results in a Form 10-Q. (*See* Shamus Decl. Ex. 2 (Dkt. No. 20-3).) Consistent with its reporting obligations, the Company's Form 10-Q disclosed that the Company's cash on hand was limited as of September 30, and that Shamus's counterclaims could materially impact the Company's financial condition. Shamus seizes upon these disclosures to suggest financial instability. He neglects to advise the Court that on December 2, Wizard World completed a $2.5 million cash financing, thus resolving any liquidity issues. (Maatta Decl. ¶ 22, Ex. J.) The Company is current in its SEC filings and its shares trade on the OTCQB Venture Market, an OTC Marker for early-stage and developing companies. The Company believes that it can raise additional capital as needed. (Maatta Decl. ¶ 23.)

Argument

I

THE COURT SHOULD DENY THE MOTION FOR ATTACHMENT

A.     The Standard for Attachment

Attachment is a drastic and harsh remedy. *See In re Daly & Sinnott Law Centers PLLC*, 292 B.R. 796, 798 (Bankr. D. Vt. 2003) (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 328 (2d Cir. 1983)); *J.V.W. Inv. Ltd. v. Kelleher*, 41 A.D.3d 233, 234 (1st Dep't 2007); *P.T. Wanderer Assocs. v. Talcott Communications Corp.*, 111 A.D.2d 55, 56 (1st Dep't 1985). New

York law requires that the relevant attachment statutes be construed strictly against those who seek to invoke the remedy. *See Brastex*, 702 F.2d at 332 ("[S]ince attachment is an extraordinary remedy created by statute in derogation of common law, the provision should be strictly construed in favor of those against whom it is employed."); *Penoyar v. Kelsey*, 150 N.Y. 77, 80 (N.Y. 1896) ("Owing to the statutory origin and harsh nature of this remedy the section in question should be construed … strictly in favor of those against whom it may be employed."); *Elton Leather Corp. v. First Gen. Res. Co.*, 138 A.D.2d 132,135 (1st Dep't 1988) ("[B]ecause of its harsh nature and, it being in derogation of the common law, the courts have strictly construed the statute creating it in favor of those against whom it may be employed." (internal quotation marks omitted)).

Under Rule 64 of the Federal Rules of Civil Procedure, a district court can grant an order of attachment if it is available under the law of the state where the court is located. Fed. R. Civ. P. 64. Under New York's Civil Practice Law and Rules ("CPLR"), a party seeking attachment must show (i) that it has a cause of action, (ii) that it is probable that it will succeed on the merits, (iii) that one or more grounds for attachment provided in CPLR 6201 exist, and (iv) that the amount demanded from the non-moving party exceeds all counterclaims known to the moving party. *See* CPLR 6212(a). A court may, in its discretion, deny a motion for attachment if the movant fails to sufficiently establish the need for attachment, even when the movant establishes the existence of each statutory element. *See Capital Ventures Int'l v. Rep. of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006); *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007).

B.  Defendant Has Not Established Any Grounds for Attachment

Without regard to the merits of any claim, a party seeking attachment pursuant to CPLR 6212 must establish that one of the grounds for attachment in CPLR 6201 is present. Defendant

6

relies upon CPLR 6201(1) by alleging that Wizard World is not registered to do business in the New York, and CPLR 6201(3) by alleging that Wizard World is fraudulently secreting assets from the State. Defendant fails to justify attachment under either ground.

Contrary to Defendant's bare allegation, Wizard World is properly registered to do business as a foreign corporation with the New York Department of State. (*See* Maatta Decl. ¶ 10, Ex. C (Department of State certificate of good standing, stating that Wizard World "is still authorized to do business in the State of New York").) Accordingly, by the CPLR's own terms, Wizard World is not "a foreign corporation not qualified to do business in the state," and the grounds presented in CPLR 6201(1) are not available. *See P.T. Wanderer Assocs.*, 111 A.D.2d at 55 (noting that First Department had previously affirmed the trial court's vacating an attachment order when corporation became duly registered). As set forth in Mr. Maatta's Declaration, Wizard World registered to do business in New York in February 2011, when its corporate headquarters was relocated here. It has remained in good standing ever since, also maintaining an office in Manhattan, where, among others, Defendant was employed. (Maatta Decl. ¶ 10.)

Even if Wizard World were not registered to do business in the state, "the mere fact that the [non-moving party] is a non-domiciliary residing without the State of New York is not sufficient ground for granting an attachment." *TAGC Mgt., LLC v. Lehman*, 842 F. Supp. 2d 575, 586 (S.D.N.Y. 2012); *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 61-62 (1st Dep't 2013). Instead, the party seeking an attachment must demonstrate a "real" and "identifiable risk" that it will not be able to satisfy the judgment. *VisionChina Media*, 109 A.D.3d at 60.

Here, Shamus fails to point to any "identifiable risk" that justifies the extraordinary remedy of attachment. Wizard World is a publicly traded company with millions of dollars in

3977530-6

assets. Shamus cites to a disclosure in the Company's Form 10-Q for the quarter that ended on September 30, 2016, filed on November 21, 2016, to suggest that the Company is "bleeding cash." (Dkt. No. 21 at 3; *see also* Dkt. No. 20 at ¶ 6.) As publicly disclosed in an 8-K filed on December 2, 2016, the Company received $2.5 million in cash pursuant to a securities offering. (Maatta Decl. ¶ 22.) This injection of cash further enhances the Company's prospects for growth. Indeed, as of December 30, 2016, the Company's market capitalization was nearly $12 million.

Shamus also alleges that the Company's disclosure in the Form 10-Q that any judgment owed to Shamus may have a material impact on the Company's financial condition. This in no way constitutes an "admi[ssion]" that the judgment "may not be recoverable" (Dkt. No. 20 at ¶ 6) and is not an identifiable risk regarding the Company's ability to satisfy a judgment. (Maatta Decl. ¶ 24.)

Accordingly, an attachment is not warranted here because Defendant has made no showing that Wizard World "lack[s] sufficient assets, or that [it] will choose to hide or otherwise dispose of their assets." *VisionChina Media*, 109 A.D.3d at 61; *see also Strategic Growth Int'l v. RemoteMDx, Inc.*, 2008 WL 4179235, at *7-8 (S.D.N.Y. Sept. 10, 2008) (denying motion for order of attachment where plaintiff failed to persuade the court that the non-domiciliary defendant was "unable or unwilling to satisfy any judgment against it"); *Founders Ins. Co. Ltd. v Everest Nat'l Ins. Co.*, 41 A.D.3d 350, 351 (1st Dep't 2007) (movant must make more than a showing that attachment would be "helpful"). Wizard World's finances are strong, and Shamus is not subject to a risk that a judgment will be unenforceable such that the grounds for attachment presented in CPLR 62101(1) are not available to Shamus.

To establish grounds for an attachment pursuant to CPLR 6201(3), Shamus must show that Wizard World has or is about to assign, dispose of, encumber or secrete property or remove

8

property from the jurisdiction with an intent to defraud. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 538 (N.Y. 2009) (noting attachments are "frequently used when the creditor suspects that the debtor is secreting property or removing it from New York"). Shamus must also present evidentiary facts establishing this purported fraud. *Mineola Ford Sales Ltd. v. Rapp*, 242 A.D.2d 371, 371 (2d Dep't 1997) ("moving papers must contain evidentiary facts--as opposed to conclusions--proving the fraud"). The evidence of fraud must be established by an affidavit from a person with actual knowledge. *Rosenthal v. Rochester Button Co., Inc.*, 148 A.D.2d 375, 376 (1st Dep't 1989).

"[I]t is incumbent upon [the moving party] to demonstrate that the [non-moving party] is acting with intent to defraud." *Coley v. Vannguard Urban Improvement Ass'n, Inc.*, 2016 WL 7217641, at *7 (E.D.N.Y. Dec. 13, 2016). Courts have made clear that a mere "suspicion" of intent to defraud is insufficient; there must be a showing that the intent "really existed in the mind of the [non-moving party]," and is not a matter of speculation. *Eaton Factors Co. v. Double Eagle Corp.*, 17 A.D.2d 135, 136 (1st Dep't 1962); *see Ne. United Corp. v. Lewis*, 137 A.D.3d 1387, 1388–89 (3d Dep't 2016) (finding evidence of continued operations, even with some evidence of winding down operations, sufficient to defeat inference that those "efforts were for the purpose of secreting assets in order to frustrate a potential judgment"). It must appear that such fraudulent intent really exists in the non-moving party's mind and the mere removal or assignment or other disposition of property is not sufficient for attachment. *Encore Credit Corp. v. LaMattina*, 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006); *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 5 Misc. 3d 285, 302 (N.Y. Sup. Ct. 2004).

To support his contention of secreting assets, Defendant merely alleges that the Company's entering into a 63-month sublease for a California office that included two years of

3977530-6

pre-paid rent constitutes "looting" of the Company. (Dkt. No. 20 at ¶¶ 6-7.) Defendant does not make any allegation regarding Wizard World's intent (let alone fraudulent intent) in entering into this transaction, and thus fails to meet his burden. *See Solomon v. Casamento*, 1991 WL 41834, at *6 (E.D.N.Y. Feb. 27, 1991) (allegations that party was attempting to sell a building—its sole asset—did not create an inference of fraudulent intent). Nor does Shamus suggest that any assets were being from the State of New York. This sublease was a standard commercial transaction, and Defendant provides no basis to suggest that it will affect the financial condition of the Company. Indeed, the Company entered into the lease in June 2016, well before any dispute arose with Shamus. It would have to pay rent wherever it located its offices. (Maatta Decl. ¶ 25.)

Accordingly, Shamus has failed to establish any grounds for attachment under CPLR 6201, and his motion must be denied on that basis.

### C. Defendant Has Not Shown a Probability of Success on the Merits

Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and it "must show *proof stronger than that required* to make a prima facie case." *Musket Corp.*, 512 F. Supp. 2d at 160 (emphasis added). Defendant has not shown a probability of success on the merits because Defendant offers insufficient proof to meet his burden, and because Wizard World has a strong contractual abandonment defense against the claim such that he is not likely to succeed on his claim.

Defendant has not met his burden to establish a strong probability of success on the merits because the legitimacy of the Purported Agreement is in serious doubt. Defendant has only offered two increasingly illegible scans of the Purported Agreement, which raise doubts regarding their authenticity. Defendant has also failed to identify why the Company had no prior knowledge of the Purported Agreement, and failed to offer any evidentiary proof regarding his

10

repeated requests for payment under its terms. Defendant has failed to even offer a declaration from the signatory of the Purported Agreement, his own brother, or from his brother Kenneth Shamus, a former Board member.

In support of this obligation, Defendant alleges he is "confident" that the employment contract is "binding." (Dkt. No. 20 ¶ 9.) At most, Defendant's Counterclaims and Declaration offer conclusory statements regarding making demands and offered promises, without providing any dates, names, or circumstances of such communications. Offering this specious amount of proof in support of a request for a $655,000 attachment, as Defendant has done here, should not be tolerated. As a result of the weakness of Defendant's offered proof, his request for attachment must be denied. *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) (finding that "blunderbuss and conclusory pleading style, without amplification by affidavit or other evidentiary vehicle, does not state a claim against these defendants" and defeated probability of success on the merits on attachment motion).

The parties' conduct after the alleged execution of the Purported Agreement demonstrates their abandonment of the contract (if it is even authentic). "[A]bandonment of a contract need not be express, but may be inferred from the conduct of the parties and the attendant circumstances." *Bercow v. Damus*, 5 A.D.3d 711, 712 (2d Dep't 2004). The parties' conduct is relevant to whether there was mutual assent to abandon a contract. *See Reives v. Lumpkin*, 2015 WL 404683, at *8 (S.D.N.Y. Jan. 30, 2015) (Abrams, J.), *aff'd,* 632 F. App'x 34 (2d Cir. 2016). Further, acting inconsistently with a contract, when coupled with acquiescence to that behavior, warrants a finding of abandonment. *Id.*; *Sub10k, Inc. v. Nat'l Marketing Servs., Ltd.*, 31 A.D.3d 744, 744 (2d Dep't 2006) (affirming denial of motion for attachment because

"plaintiff acquiesced to the defendants' actions, which were inconsistent with the terms of the contract").

The parties' conduct here clearly establishes that the Purported Agreement was abandoned. Defendant Shamus was never paid a salary approaching what he was allegedly due under the Purported Agreement, even upon its alleged signing. In the first operative year of the Purported Agreement, Shamus was actually paid $97,748 in compensation, instead of the $150,000 alleged due. (Maatta Decl. ¶ 18.) This two-thirds difference occurred while Gareb Shamus, Defendant's brother and signatory to the Purported Agreement, was the CEO. The Company continued to pay far less than the amount called for, and Defendant never protested. Immediately prior to his termination, Defendant was earning a $175,000 base salary, contrary to the allegedly binding terms that would have required a $241,675.50 base salary.

The facts here are similar to those in *Reives*, in which the defendant hired a new manager, and the plaintiff-manager "did not make any attempt to contact [defendant], or pursue legal action" and did not "mention the management agreement to [defendant]" at prior meetings, and other than one payment, "never received or … requested any payments owed pursuant to the management contract." *Reives*, 632 F. App'x at 36. Shamus made no mention of the Purported Agreement signed in 2011, other than in late 2016 when he clashed with Wizard World's new CEO. This silence is pure acquiescence. Defendant's conclusory allegations that he made demands to Wizard World are entirely unsupported, and are contradicted by the declarations submitted herewith. (*See* Maatta Decl. ¶ 16; Macaluso Decl. ¶¶ 3-5; Lucosky Decl. ¶¶ 4-5.)

Accordingly, the Purported Agreement "has been virtually ignored and legally abandoned." *Mossberg v. Standard Oil Co. of N.J.*, 98 N.J. Super. 393, 407 (Sup. Ct. N.J. 1967) (applying New York law, and finding agreement abandoned and unenforceable); *see also Jones*

12

*v. Hirschfeld*, 348 F. Supp. 2d 50, 61 (S.D.N.Y. 2004) (holding that party's statements in an affidavit during course of litigation and four years after the fact failed to raise issue of fact such that abandonment of contract was proven). Defendant's counterclaims are unlikely to succeed given this authority.

   D. <u>Defendant Has No Probability of Success Because His Counterclaims Will Be Dismissed as a Result of His Destruction of Evidence</u>

Finally, Defendant's counterclaims are subject to dismissal as a discovery sanction as a result of his acknowledged destruction of relevant evidence that cannot otherwise be obtained. Therefore, the counterclaims also suffer from a low probability of success on this independent ground.

At the time of its destruction, Shamus was under an obligation to preserve the laptop. Defendant has admitted to destroying his laptop while in a dispute with the Company regarding his employment, just one day before his termination. The fact that this destruction occurred "before he was terminated, before any demand was made regarding the laptop, and before any lawsuit was commenced against him" is irrelevant to whether Shamus had an obligation to preserve all relevant documents. *See Treppel v. Biovail Corp.*, 249 F.R.D. 111, 117 (S.D.N.Y. 2008) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.").

Wizard World is entitled to all relevant evidence regarding the Purported Agreement. Shamus's laptop would contain crucial relevant evidence in the form of all iterations of the Purported Agreement in digital form. This ESI would have indicated, among other things, when the agreement was created, copied, and/or scanned. This information is crucial because Wizard World's key executives and advisors had no prior knowledge of the Purported Agreement's

13
3977530-6

existence. Further, this ESI was unique to Shamus's laptop and cannot be replicated from other sources.

As a result of this destruction of relevant evidence, Wizard World is entitled to dismissal of Shamus's counterclaims (and perhaps default judgment in favor of Plaintiff on its claims). This sanction is warranted under Rule 37 of the Federal Rules of Civil Procedure, as well as the Court's inherent power. *See Ceglia v. Zuckerberg*, 600 F. App'x 34, 36 (2d Cir. 2015); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250 (1944) (a district court is "warranted in dismissing [a] case" once it "learn[s] of the fraud"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (explaining that "outright dismissal of a lawsuit" under the court's inherent authority "is within the court's discretion").

In scenarios such as this, courts routinely grant dismissal of the spoliating party's claims, including before summary judgment or trial. *See, e.g., Ceglia*, 600 F. App'x at 37 (affirming dismissal of action as a result of destruction of evidence of electronic media and of hard copy version of agreement central to case, as well as proof of forgery of such agreement); *S. New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (affirming district court's entry of default judgment against party that "engaged in the willful destruction of evidence" that was "obviously germane" to litigation); *Gutman v. Klein*, 2008 WL 4682208, at *1 (E.D.N.Y. Oct. 15, 2008), *adopted*, 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008) (granting default judgment after party was found to have deleted files from computer); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (affirming dismissal as a result of "willful spoliation" by intentionally deleting many files on laptop).

Dismissal will also be appropriate if Plaintiff establishes that the Purported Agreement is a forgery and amounted to a fraud on the court. *See Shangold v. Walt Disney Co.*, 275 F. App'x

72, 73 (2d Cir. 2008) (affirming dismissal for fraud on the court after party established that party "submitted fraudulent evidence to the district court in order to bolster their claim"); *DAG Jewish Directories, Inc. v. Y & R Media, LLC*, 2010 WL 3219292, at *4-5 (S.D.N.Y. Aug. 12, 2010) (dismissing case after party's "forgery has been proven"); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989); *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 655-57 (7th Cir. 2003) (affirming dismissal of suit based upon forged letters and emails); *Pope v. Fed. Express Corp.*, 974 F.2d 982, 983-84 (8th Cir. 1992) (affirming dismissal of claim relying on forged note from supervisor); *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995) (holding it is "well established that dismissal is the appropriate sanction where a party manufactures evidence which purports to corroborate its substantive claims"). In doing so, a court is entitled to use its "common sense" to determine whether to dismiss a fraudulent claim. *Aoude*, 892 F.2d at 1121.

In addition, dismissal will still be appropriate under the new Rule 37(e) of the Federal Rules of Civil Procedure. Under this Rule, dismissal is appropriate if ESI "that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," and (1) there is a "finding prejudice to another party" or (2) it is established that "the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). The laptop clearly should have been preserved, and Shamus intentionally destroyed the laptop in order to prejudice Wizard World and deprive it of evidence that could be used against him.

Accordingly, because Shamus's claims should also be dismissed as a discovery sanction due to his spoliation of relevant evidence, Wizard World will have a further defense to his counterclaims.

Conclusion

For the foregoing reasons, Plaintiff respectfully asks the Court to deny Defendant's motion for prejudgment attachment in its entirety. Should the Court grant Defendant any form of attachment, Plaintiff respectfully requests that Defendant be required to post an appropriate undertaking pursuant to CPLR 6212(b).

Dated: New York, New York
January 23, 2017

OLSHAN FROME WOLOSKY LLP

By: */s/ Thomas J. Fleming*
Thomas J. Fleming
Kyle J. Kolb
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Plaintiff*